Case number 17-2223, Derrick Bunkley v. City of Detroit, Michigan, et al. Argument not to exceed 15 minutes per side. Ms. White, you may proceed for the appellant. Good morning. May it please the Court, Sherry White on behalf of the appellants, I am reserving 3 minutes for rebuttal. I'm not going to belabor the facts in this case. The claims are malicious prosecution against Investigator Latanya Moses and claims of failure to intervene in false arrest against three detectives, Officers Tangway, Dennis, and Washington, and Sergeant Lucas. I think the best place to start in this case is that there was probable cause for the arrest of Plaintiff Mr. Bunkley because there was an undisputed positive identification of him by the victim, Ms. Paris Ainsworth. That was not before the arrest though, was it? Excuse me? Was that before the arrest, that there was a positive identification? No, it was approximately 12 hours later. So how can that serve as probable cause for an arrest? It was when she was interviewed by Investigator Moses, but we also argue there was no reason for anybody to believe that he wasn't the correct person. The three arresting officers... The probable cause is defined by no reason to believe that he wasn't? No, there was no evidence that they didn't have any reason to believe that... In other words, the three arresting officers consulted with their sergeant, Sergeant Lucas. And I think that's kind of the definition of qualified immunity. But all they really knew is that the injured party had been assaulted by two black males and that there was a black male in the hospital that came in relatively contemporaneous in time with gunshot wounds. They really didn't know any more than that, did they? No, and that is so noted in the investigator's report. But that has nothing to do with the positive identification of Mr. Bunkley by Ms. Ainsworth. Well, that would be certainly relevant to her part of this case, but it was after the fact, as has been pointed out, as far as the initial arrest is concerned. Well, that's why we point out that at the very outside, there's only a very close 12-hour period of time where a plaintiff could even claim that there was no probable cause, at the very outside. But we also, I think, have demonstrated that there's no evidence in the record that it would have been clear to the three arresting officers or to Sergeant Lucas that the arrest was unlawful. And that's the definition of qualified immunity. That's why the three arresting officers contacted their supervising sergeant. And with respect to Sergeant Lucas himself, again, there's no evidence that it was clear to him that this arrest was unlawful. Well, now, the sergeant had no independent knowledge of any of this other than what the officers told him, did he? No, he was not at the scene. He was contacted by his officers, correct. So they said, thus, thus, thus, and he said, go ahead and arrest him. Is that correct? Yes, he directed the three officers to make the arrest. Did the sergeant have the same information that the officers did? Did the officers tell the sergeant everything they knew? He had the information that the officers had that they conveyed to him. So you're not contending the sergeant had less information than the officers? There's no indication that he had any less. The officers contacted him, and again, as I thought about this, it seems like that's kind of the definition of qualified immunity, where, you know, you go to your supervisor. There are a lot of misrepresentations that plaintiff has made about the record that I pointed out in my reply brief, particularly with regard to Investigator Moses. What are they? Oh, as pertains to the Facebook activity and the phone calls, you have to remember that Investigator Moses did not have access to Plaintiff's Facebook page or the phone until the morning of jury selection, while the jury selection was in progress. That was the first time that Investigator Moses was given access or given the opportunity to review the Facebook? That is correct. The credentials that were given to her by plaintiff were incorrect. The correct credentials were given to her on the morning of jury selection. So prior to that day, there had been some credentials given to her to access Facebook? In Plaintiff's statement, there were credentials given, but they were incorrect. And did she make any effort to go back to the defendant to ask for the correct credentials before the first day of trial? I'm not aware that she did. What occurred on the morning of jury selection was that Plaintiff's mother was in court and that she provided the credentials and pictures were located showing Plaintiff at home with a certain time stamp, May 4th, 1240-ish a.m. Investigator Moses went to another floor, because there wasn't a color printer on the 10th floor, to print out those pictures. And it turned out that when she did so, there was a different time on there, as I point out in the testimony. But Plaintiff claims that Moses falsely claimed that Plaintiff's mother had changed the time stamp. Well, her testimony doesn't indicate that. She answered the questions that were posed to her at the trial. But Moses had interviewed the gentleman in custody, and she knew that that was basically his sole defense. And so at any time, she knew exactly where he was, and she could have gone and said, I can't get in with your password or whatever else was the problem. Could she not? There's no indication. There's nothing in the record about that that I recall. Okay. Thank you. And she also didn't have access to Plaintiff's cell phone until the morning of jury selection, at which time she went through the calls and then truthfully testified according to the questions that were asked of her relative to that phone activity. She didn't intentionally omit any exculpatory Facebook posts because she wasn't aware of them at the time of her investigator's report. She didn't see the phone until approximately 10 o'clock on the morning of jury selection. And she didn't withhold the lack of positive identification of Mr. Knox either. That is in her investigator's report. As I remember, she was at counsel's table during the trial. Is that right? Yes, she was. So apparently, she didn't tap the prosecutor on the shoulder and say, I'm sorry, I'm sorry. She said, hey, there's some new stuff developing here. Maybe we better take a look at it. Well, the defense counsel testified about that, Mr. Blanda, and Mr. Blanda testified about that. You mean in the civil trial? He was aware about the time stamp. He testified at his deposition. He didn't recall whether it was told to him by the police or by the prosecutor or Mr. Matthew Penny, but he said he was given the impression that the time stamp could have been changed. And so I'm in the middle of trial, and frankly, I say, I don't want this to blow up in my face. He's fully aware of this and made a tactical decision, which has nothing to do with any of the police officers. Are the Facebook photos, they're part of the record in this case, the evidence that was considered at the summary judgment? My question is, what are the time stamps on the photos now? Do the time stamps on the photos now show that it's an alibi that he was uploading during the time of the events in question? Well, I believe that's part of why the conviction was ultimately reversed. I guess I'm trying to understand how the time stamps could have been changed and what's the evidence on that, other than Ms. Moses saying that they were changed. Is it actually technologically possible to change the time stamps on Facebook? Is there any evidence of that? To my understanding, it is. I certainly don't have the knowledge to do it. Is there any evidence of that in the record? But apparently it technically could be done. Is there any expert testimony? Is there any kind of evidence that it could be changed? Not in this case. Not on the record on summary judgment in this case, correct? No. Investigator Moses testified that she saw a different time. And the big takeaway there is she answered truthfully on the stand the questions that were posed to her by the prosecutor about this. And she did not point a finger at anybody. Well, she may have been mistaken, but if you couldn't change the time stamp, then she was testifying incorrectly. Wouldn't you agree? Well, if it couldn't be, I don't know what the explanation would be that she saw a different time. But what she testified to is that there were different times. Not pointing a finger at anybody because she didn't have the expertise to do so. And just to wrap up briefly, the three arresting officers are qualifiedly immune. There's no evidence to show that at the time of the arrest that Mr. Bunkley was not the correct person. There was a positive ID 12 hours later. And with respect to Investigator Moses, she did what she was supposed to do. She did not hide anything. She testified truthfully, answering all the questions that were asked of her by the prosecutor. Plaintiff's Defense Counsel was aware of what she was aware of. He testified to that himself and made his own tactical decision. Made his own tactical decision. And not based on any wrongdoing of any of these police officers. Are there any other questions? I think not. Thank you, Counsel. May it please the Court. Good morning, Your Honors. My name is Heather Lewis Donnell. I represent the plaintiff appellee here, Mr. Derek Bunkley. Mr. Derek Bunkley was wrongfully convicted and falsely imprisoned for nearly two years of his life for a crime that it is undisputed that he's innocent of. And we're here on an interlocutory appeal from the denial of qualified immunity. And despite the Supreme Court's very clear instruction in Johnson v. Jones, its progeny, and all the Sixth Circuit cases discussing the scope of appellate jurisdiction, which establishes that only the purely legal questions are the questions that are properly before this Court. Despite that, the defendant's brief, basically the majority of the brief except for the last two lines on page 25 and the last page on 26, asks this Court to delve well beyond the jurisdictional boundaries here, go way, way into the facts, and review the District Court's sufficiency of the evidence determinations at summary judgment. And there is very clearly no jurisdiction to do that here. And even Ms. White's argument here starts arguing a factual dispute, probable cause for the false arrest, which is a matter that is not properly before this Court. The District Court found that that has to be decided by the jury because the facts and the record here show that plaintiff could prevail, that probable cause was lacking. So putting that to the side, the only thing that's properly before this Court right now is the purely legal question of whether it was clearly established in 2014 that the failure to intervene on Mr. Bunkley's false arrest claim was clearly established. And so that is the only question that is properly before the Court. I want to address that because it wasn't addressed in the argument here. I'm a little confused by that point. Because it seems to me it's kind of like belt suspenders here. I mean, if there's a false arrest, why do you need a claim for failure to intervene? How can you fail to intervene in your own conduct? So that's a fair question, Judge Bush, because it's true that each of the four defendants here, that we have false arrest claims against the three detectives who are at the hospital, and the Sergeant Lucas that gets a call on the phone, who is conveyed all the same information that the three officers had at the hospital. You're right. We have a false arrest claim against all four of them for their personal involvement in that false arrest. So it is an additional theory of liability that... So you'd agree if we found there's sufficient... It's not necessary to have this failure to intervene claim. That's just a redundancy here. That's true. I would say you could decide this issue on forfeiture because the only legal question before this court was addressed by the appellants in one page of their opening brief and completely ignored in their reply. So were the court wanting to reserve that issue for another day, I think you could find that issue on forfeiture. And the same for defendants would go forward on trial and the false arrest claim. Let me ask you this question relative to Moses. Sure. The one thing that distinguishes her from the other group of people is that she was operating after the positive identification was made. Now, if the defendant had offered nothing about Facebook would she be in the clear proceeding just on the basis of that positive identification? Well, no. The short answer is no, Your Honor. Why is that? Because just like in Sykes, there were additional material falsehoods that were presented to the prosecutor, Penny, in the warrant packet as well as her communications with him. So those material falsehoods, and there were three of them that are undisputed that the district court relied on here, and there was material omissions. I understand that, but I'm sort of changing the facts a little. I guess my question is, is a positive identification with nothing more sufficient for prosecution to be instituted? So if we were in the hypothetical world, not here, where there was just a positive ID and there's no material falsehoods or material omissions, and the only evidence is a positive ID, and there's no evidence of fabrication or falsehoods or material omissions, I think, yes, maybe Ahears would say that. But here we don't have that. I understand. And also, I guess I would just say also post King v. Hardwood and the recent decision in Sanders, there's now the Supreme Court's made clear that the grand jury indictment and a preliminary hearing, there's a rebuttable presumption of probable cause now where you have evidence of falsehoods and omissions that were relied upon that were material for the prosecution. And so I think now this court has clarified in King v. Hardwood and Sanders that the rebuttable presumption of probable cause, and Sanders was an eyewitness identification case. I should say that was a case where there wasn't. You have a case that says that the failure to use due diligence, if you will, in investigating someone's alibi is sufficient to ground liability. Well, I don't have that, but that's not what we have here. What we have here is being... So, well, to step back, we have court right v. City of Battle Creek. That's 839 F. 3rd 513. That's a Sixth Circuit 2016 case where when an officer is confronted with exculpatory evidence, they can't turn a blind eye. And so we have here not just the Facebook account of exculpatory evidence, but we also have that there was exculpatory evidence related to the Knox shooting. So the Knox shooting is the father's shooting that happens about an hour later, 9 miles away from the original shooting, separately and independently reported to the Detroit Police Department. There are police reports related to that shooting, officers who responded to the scene, and then the ambulance transports Mr. Knox to the hospital. All of that information is also exculpatory that was known. There's no dispute that all of that evidence was known to Investigator Moses. It was included in the investigatory report of the shooting team of Washington, Dennis, and Tanguay. And that information also was not provided to the prosecutor. And we know from the prosecutor that he would have wanted to know that. He would have gone further into the investigation. But once it was made clear that Knox, at least through the photo identification or the lineup, that Knox wasn't involved, would Moses have had any reason to further consider him in the case at all? No. Consider Derek Bunkley, my client? No. So how that happened and the timing of what happened is because Knox was the only link to Mr. Bunkley, the Knox ID is given to her first at the hospital. She says, no, that can't be him. He was much younger. Which actually comports with her two descriptions given to the officers on the scene and the officer Tanguay at the hospital. She says, you know, my assailants were two 20-year-old men, black men in their 20s. One was approximately 5'3", one was approximately 5'7". One was dark-complected, one was medium-complected. That's all they had, right? That's all they had at the time of the arrest. And so, I think I lost my train of thought, but your question, sorry, Judge Guy, was if she had had more. I'm sorry, I lost... You were talking about the link between... Oh, the link. I'm sorry, yes. So the only link to Mr. Bunkley is the fact that he's in the hospital waiting room for his father who has suffered a gunshot wound. So they give the photo array of Mr. Knox to the victim, Ms. Ainsworth, and she says it can't be him. My assailants were much younger. At that point, we think the investigation should have stopped as to Derek Bunkley. There was no link anymore. But they proceeded to give the photo array of Mr. Bunkley, and she did make a positive ID. But there are sufficient... It's not just the ID here. So, again, you have to take all the evidence that was known at the time. And I will say, with respect to the Facebook evidence, so the Facebook evidence, and I want to respond to your question earlier, Judge Bush, which is there is evidence in this record. There's police reports, and I'll give you the record site if you'd like it. At record 77-3, page ID 1388, are the Kriznet reports from an officer, Kratovich, who did forensic work on behalf of the Detroit Police Department in the post-conviction proceedings. The photos that were taken on Mr. Bunkley's cell phone and then uploaded to Facebook were occurring. There's three photos. They happened from 1140 to 1144 p.m. The comments on his Facebook page from his friends and family that are responding, those actually cannot be changed. So the appellate lawyer here... The time of those photos. So the time of the comments cannot be changed. So whenever Latonya Moses saw the Facebook... Now, we think it's a fact question as to when Latonya Moses saw the Facebook. Yeah, that's all you need. It is a fact question, and the reason for that is that when she came to interview Mr. Bunkley when he was in custody, he provided his Facebook login credentials. I will tell you, Latonya Moses misspelled the name of his daughter, Desiree, but Mr. Bunkley testified in his deposition that he showed her the tattoo of his daughter's name on his arm. Again, this is a fact question the jury's going to get to decide. We're going to put on our evidence related to the Facebook page. They're going to put on their evidence, and the jury's going to get to decide whether and when that was known. There is no dispute at the time the trial was starting, during jury trial, that, again, this information was seen, and Latonya Moses saw it, made certain representations to the prosecutor that were then conveyed to the criminal defense. But again, this is wading so into the facts. It was Moses who told the prosecutor... Correct me if I'm wrong. It was Moses who told the prosecutor that Bunkley and Knox had arrived at the hospital together. She conveyed that to the prosecutor, and the prosecutor had that understanding all the way through. And she did not provide to him the separate Kriznet reports, those are the police department reports in the Detroit Police Department, that showed the independent reporting to the police department of the Knox shooting. And I do want to step back before I have all my time expired to say that, again, these questions, I think, I want to answer all these questions, but I do want to remind that we are now talking about reviewing factual determinations that the district court made in denying summary judgment that are not... Of course, we have to determine whether those disputes of fact are actually material to the issue, which is why at least some of the questions that I'm rolling around in my head come to mind. And one of them is that... Correct me if I'm wrong, but my understanding was that Moses actually provided some very specific information to the prosecutor that was not true. Absolutely correct. And there's three of those falsehoods that are undisputed by the parties that the district court relied on. But I think in the qualified immunity analysis, with respect to defendant Moses, the question is, was it clearly established that... Because we have a malicious prosecution claim against her. So the question for qualified immunity was, was it clearly established in 2014 that you need a probable cause to initiate and continue a criminal prosecution? And that question, that legal question, is not even disputed. It wasn't disputed at summary judgment. It's not disputed here. I think it's more specific than that, qualified immunity, just whether or not there's a probable cause. That's not the standard. It has to be more specific to the case that you're talking about. Sure, but it was also clearly established. It's clearly established way back as Mallee v. Briggs, Pyle, that you can't... Officers cannot falsify evidence to manufacture a probable cause. I mean, that's not a legal question that's in dispute. And so we have three falsehoods, material falsehoods, that are not disputed here that were conveyed to the prosecutor in the warrant packet in her communications with the prosecutor. We also have material omissions. We have the Facebook omission, and we have the Knox shooting and the evidence surrounding the Knox shooting. Those five things, you know, three undisputed material falsehoods, two facts on which plaintiff can prevail on material omissions. And the law is clear, right? Nobody's even disputing whether officers can falsify a probable cause, manufacture a probable cause. So I think for the qualified immunity question for Latanya Moses, I don't think there's a real legal question here before the court. I do think the legal question that is properly here is the question on the failure to intervene claim, which I'm happy to address if I have time and the court is interested. But if not, I'm happy to entertain any other questions that the court may have. I think we're good. We're good. Okay. Thank you very much for your time. Plaintiff continues to misrepresent the record to try to create material factual disputes that just are not here. But don't you have to accept the facts and the defendant's inferences of the facts in order to bring this appeal? I mean, we don't really have jurisdiction unless you're accepting all these facts. Do we? I think we've demonstrated that there isn't a material factual dispute. Plaintiff's counsel just talked about the Knox shooting, the bullets in Mr. Knox's leg. As we point out, Investigator Moses answered the questions that were asked of her by the prosecutor at trial. She didn't misrepresent anything. Legally speaking, can the police department just go into somebody and take evidence out of them? No. Plaintiff is just continuing to misrepresent the factual records. Mr. Knox is not the only link to Mr. Bunkley. Ms. Ainsworth positively identified him. That's the starting point here. We have a positive identification. Well, it's not the starting point for the arrest. If that identification wasn't made until after the arrest and everything else really sort of proceeded from the arrest, isn't that a problem? Well, as we've said, there is at the very most a closed 12-hour period where a plaintiff could even contend that there wasn't probable cause. But we also contend that there was probable cause for the arrest at the time. There was no reason. The officers had every reason to believe that he was the correct person. They had no reason to believe that the arrest was unlawful. Therefore, qualified immunity would apply. There is no evidence falsified by Investigator Moses. I went through in the reply brief and showed that by her testimony. She answered the questions that were asked of her. There was no misrepresentations of anything. The lack of positive identification, Mr. Knox, is in the investigator's report. That was not omitted. The prosecutor knew all about the Facebook issue. He testified to that and, again, made his own decision on that basis that the police were not responsible for. So to sum up, plaintiff has tried to create factual disputes to argue that the court doesn't have jurisdiction. I would submit the court absolutely has jurisdiction. This was recently discussed in Berry v. O'Grady. Two exceptions. An appellate court may overrule a district court's determination that a factual dispute exists where evidence in the record establishes that the determination is blatantly and demonstrably false. Here, there is no dispute of material fact. Also, here, again, we may overlook a factual disagreement if the defendant, despite disputing the plaintiff's version of the story, is willing to concede the most favorable view of the facts. Here, we have the positive identification. So you have not conceded the most favorable view of the facts. You'll see that your red light is on. If there are no further questions... Thank you, counsel. The case will be submitted. Clerk may call the next case.